UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-410-GWU

ELLEN NUNLEY,                                                                           PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

        Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

06-410 Nunley

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Case: 6:06-cv-00410-GWU   Doc #: 11   Filed: 07/06/07   Page: 6 of 11 - Page ID#: 69

06-410 Nunley

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ellen Nunley, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, residuals of bilateral carpal tunnel syndrome, early osteoarthritis of the knees, and depression. (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Nunley retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 25-9).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion and also had the following non-exertional impairments. (Tr. 536).  She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop, bend, and climb ramps or stairs; (3) could perform no more than

"frequent" gross manipulation; and (4) would be limited to simple instructions in object-focused settings. (Id.). The VE responded that there would be jobs that such a person could perform such as production assembler, production inspector, and hand packer, with a total of 2,400 jobs in the state of Kentucky and 117,000 nationally. (Tr. 536-7).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although the ALJ found that the plaintiff was severely impaired due to depression, he imposed functional restrictions generally consistent with the opinion of state agency reviewing psychologists Edward Stodola and Lea Perritt, who had determined that the plaintiff would have a "moderately limited" ability to maintain attention and concentration for extended periods and respond appropriately to changes in the work setting. (Tr. 320-7). The hypothetical question did not specifically limit the plaintiff's attention and concentration, however. More significantly, Drs. Stodola and Perritt based their conclusions on the report of a consultative psychological examiner, Dr. Kenneth Starkey. Dr. Starkey's examination took place in November, 2004 and resulted in a diagnosis of a pain disorder and a depressive disorder. (Tr. 261). Dr. Starkey indicated in the body of his opinion that the plaintiff was likely to have moderate difficulty responding to the

normal day-to-day stressors of work environments and sustaining concentration and pace for completing everyday work tasks (Tr. 260), but he also opined that the plaintiff would require several months of formal psychiatric and psychological care before being rendered psychologically appropriate for vocational training or placement. (Tr. 261). He stated that: "Without such treatment, Ms. Nunley's prognosis for being able to sustain [gainful] public employment in any future time remains guarded." (Id.). While the state agency reviewers stated that their opinions were consistent with Dr. Starkey and they assigned his report "great weight," they did not discuss the fact that Dr. Starkey explicitly considered the plaintiff to be unemployable without psychiatric care. (Tr. 322). The ALJ did note Dr. Starkey's opinion in passing (Tr. 24), he did not reconcile this opinion with the remainder of the psychological evidence.

The plaintiff did subsequently obtain psychiatric care for approximately seven months from Dr. Raquel Vasquez, who diagnosed major depression with a Global Assessment of Functioning (GAF) score of 55-60. (Tr. 416-17). A GAF score in this range is consistent with moderate difficulties in social, occupational, or school functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.[1] At the time of the plaintiff's first visit to Dr. Vazquez on June 6,

---

[1] Dr. Starkey had indicated a GAF score of 57 (Tr. 261), consistent with Dr. Vasquez.

06-410 Nunley

2005, she stated that her depressed mood, which included crying spells, anhedonia, and sleep and appetite disturbances had grown progressively worse in the previous three months, although she had been on the medication Lexapro for the previous six months. (Tr. 416). Dr. Vasquez added a new medication, and while the plaintiff initially reported feeling better, she later reported a worsening of her symptoms. (Tr. 417-26). Dr. Vasquez never gave any opinion regarding functional capacity, and while she checked boxes indicating that the plaintiff's examination in many areas indicated that she was alert and had intact attention, concentration, memory, and judgment (e.g., Tr. 426-7), it is not readily apparent to a lay reviewer whether the plaintiff's condition had improved to the point that Dr. Starkey's opinion could be disregarded. Accordingly, a remand will be required for testimony from a medical expert or another examiner with access to the entire record if Dr. Starkey's opinion is to be disregarded.

The court also notes in passing that the physical restrictions selected by the ALJ do not precisely reflect the opinion of any examining or reviewing source, with the possible exception of Dr. William Lester, whose office notes contain a written reference to a functional capacity evaluation which is not in the transcript. (Tr. 187).[2] Even this office note may have some inconsistency with the hypothetical question

---

[2] As the ALJ noted, the plaintiff's treating physician, Dr. Robert Hoskins, offered contradictory opinions. (Tr. 252, 265).

10

06-410  Nunley

as it appears to indicate that the plaintiff can do light lifting which is defined as 15 to 20 pounds.  (Id.).  A state agency reviewing source, Dr. M. Allen Dawson, had concluded that the plaintiff would have a limitation to occasional balancing as well as occasional climbing and "frequent" gross manipulation.  (Tr. 344-51).  The limitation on balancing could have a significant impact on the job base.  Social Security Ruling 85-15, p. 6.  Another examiner, Dr. Robert K. Johnson, had suggested limitations on working around hazardous surfaces (Tr. 461), and Dr. Timothy Kriss stated that the plaintiff needed to change positions from sitting to standing every one to two hours (Tr. 472).  While these restrictions might or might not be accommodated in light level jobs, the opinion of the VE should be obtained, especially given the very low number of jobs identified in response to the existing hypothetical question.

The decision will be remanded for further consideration.

This the 6th day of July, 2007.



Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**